**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Mark L. Hankin, (MH1824)
Hankin, Handwerker & Mazel, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
(212) 349-1668
*Attorneys for Plaintiff*
Visual Interactive Phone Concepts, Inc.
------------------------------------------------------------------x
VISUAL INTERACTIVE PHONE CONCEPTS,
INC.,                                                             Document Electronically Filed

                                        Plaintiff,

                -against-

VIRGIN MOBILE USA, LLC

                                        Defendant.
------------------------------------------------------------------x          CIVIL ACTION NO.
VIRGIN MOBILE USA, LLC,                                          05-2661 (MLC)

                                        Counterclaim-
                                        Plaintiff,

                -against-

VISUAL INTERACTIVE PHONE CONCEPTS,
INC.,
                                        Counterclaim-
                                        Defendant.
------------------------------------------------------------------x


**BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**ON BEHALF OF VISUAL INTERACTIVE PHONE CONCEPTS, INC.**

## TABLE OF CONTENTS

Page

I.      Preliminary Statement...........................................................  1

II.     Procedural Background........................................................  4

III.    V.I.P.C. Has Standing To Commence And Prosecute This Action
        For Patent Infringement...................................................7

        (A)   Legal Standard On Motion for Summary Judgment Based
              Upon Lack Of Standing ...............................................7

        (B)   The Exclusive Agreement Was Invalid And Terminated As
              A Matter of Law ........................................................8

IV.     Judicial Estoppel Is Inapplicable To The Case At Bar..........................16

V.      The Default Judgment In The New York Action Is Entitled
        Collateral Estoppel Effect.......................................................19

VI.     Conclusion .....................................................................  21

## **TABLE OF AUTHORITIES**

<u>Page</u>

<u>CASES</u>

Biosynexus Inc. v. Medimmune   816 NYS2d 693 ..................................... 13

In Re: Chambers Development
Co.,   148 F.3rd 214 229 ................................ 18

Christmas v. Russell   5 Wall, 290............................................ 19

City of Long Beach v.
New York City   286 NY 382 ........................................... 11

Cleveland v. Policy Management
Sys Corp.,   526 U.S.795 ........................................... 18

Coastal Commercial Corp.
v. Samuel   10 A.D.2d 372 ....................................... 13

Conroy v. Reebok, Int'l Ltd.   14 F.3rd 1570 ........................................ 7

Council v. Better Homes Depot
Inc,   2006 WL 2376381 ................................... 20

C.R. v. J.G.,   306 NJ Super. 214, 238-39...................... 18

Davis v. Wakelee,   156 U.S.680, 689...................................... 17

Dillon v. Andereson,   43 N.Y. 232...... .................................. 10

Fauntleroy v. Lum,   210 U.S. 230 ........................................... 19

Filmtec Corp., v. Allied
Signal Inc.,   939 F.2d 1568 .......................................... 8

Griffy v. NY Cent. Ins Co.   100 NY 417, 422 ...................................... 13

Happy Banana v. Tishman   179 A.D.2d 562 ...................................... 10

In re: Iannelli,   12 B.R. 561, 563 n. 6................................. 19

(i)

                                                                    Page

Jackson Jordan Inc., v.
Plasser American Corp.,            747 F. 2d 1567, 1579 ........................   18

Kellerin v. Andrijevic             825 F. 2d 692                                  20

Matter of Paloma                   3 NY2d 572 .........................................   10

Matter of Vogel                    25 A.D.2d 212......................................   10

Meyer v. Riegel Prods Corp.        720 F. 2d 303, 307..............................    7

Morris v. Jones,                   329 U.S.545..........................................   19

Odell v. 704 Broadway Condo.       284 A.D. 2d 52 ...................................   10

Palcsesz v. The Midland Mutual
Life Insurance Co.                 87 F. Supp. 2nd 409 ...........................   18

Parsons v. Sutton,                 66 N.Y. 92............................................   10

Polchinsky v. Cemetery Floral      79 A.D.2d 648 ...................................   10

Raines v. Byrd                     521 US 811. 818 ................................    7

Ryan Operating v.Santiam
Midwest Lumber Co.,                81 F.3d 355..........................................   17

Sardanis v. Sumitomo Corp.         282 A.D.2d 322, 323 ........................   13

Scarano v. Central Railroad Co.    203 F.2d 510, 513 .............................   17

Society Hill Owners Association
v Rendell                          210 F.3rd 168 ...................................    7

Spitzer v. Born, Inc.              194 A.D. 739 ......................................   10

Strauss Linotyping Co.
  v. Schwalbe                      159 A.D. 2d 347 ...............................   12

Sullivan v. Gagnier,               225 F.3rd 161, 166. .......................   20

Textile Prods. Inc. vs. Mead
Corp.                              134 F.3rd 1481 ................................    8

Page

TJI Realty Inc v. Harris        250 A.D.2d 596 ...............................   9

Traster Marble Co.v.
  Brown Brothers              159 A.D. 485 .......................................   10

Vaupel Textilemanchinen KG
  v.  Meccanica Euro Italia
  S.P.A.                      944 F.2d 870 ..................................   13

Waterman v. MacKenzie        138 U.S. 252, 255.............................   13

West View Hills v. Lizan Realty   6 N.Y.2D 394 ...................................   10

Wishnov v. Kingsway
  Estates, Inc.              26 A.D.61..........................................   10

Zenith Laboratories Inc.v.
Bristol Meyers Squibb Co.    1991 WL 267892, 24
                            U.S.P.Q. 2nd 1641 ...........................   17

## STATUTES

U.S. Const. Art. III §2............................................................   7

Rules 56(c) of FRCP ..........................................................   7

## BY-LAWS

Article II - Section 6............................................................   11

Article II - Section 8 .........................................................   11

## I.   PRELIMINARY STATEMENT

That on May 20, 2005, Visual Interactive Phone Concepts, Inc., ("V.I.P.C."

commenced an action against Virgin Mobile USA, LLC., ("V.M.U") for infringement of

V.I.P.C., patents 5,606,361 (the "361 patent") and 5,724,092 (the "092 patent") for

screen telephones.

That on February 8, 2007, during the deposition of Anthony Cinotti, the

defendant V.M.U. claims it learned for the first time that an alleged Exclusive License

Agreement between V.I.P.C., and Handtrade.com, a wireless service company, was

signed by Ciotti, who claimed to be the Chief Executive Officer/President of V.I.P.C.

That based upon the testimony of Anthony Cinotti and the discovery of the Exclusive

License Agreement, the defendant V.M.U. claims that plaintiff V.I.P.C., lacked standing

to commence this action and/or should be judicially estopped from contesting standing

and requests dismissal of the plaintiff's Complaint with prejudice.

That a review of the Affidavit of John Davidsohn ("Davidsohn"); testimony of

Anthony Cinotti (hereafter "Cinotti") and, Declaration of Mark L. Hankin, (hereafter

"Hankin") reveal that the only valid license agreement existing at the time of the

commencement of this action was the Non-Exclusive License Agreement dated

October 27, 1999 which did not prohibit the commencement of this action.

That the Exclusive Agreement upon which defendant V.M.U. relies was never a

valid agreement due to the fact that it was never authorized by the Board of Directors of

V.I.P.C.; that it was executed by Cinotti, a person falsely claiming and acting as the

Chief Executive Officer and President of the plaintiff corporation without the authority and/or consent of the Board of Directors of V.I.P.C.; that the Agreement was not approved by 2/3 of preferred stockholders as required by the Preferred Stock Agreement of V.I.P.C.; that by its own terms the Agreement was invalid for failing to meet the conditions set forth therein; and, a judgment was obtained in a New York Action, Richmond Action #2 wherein the Agreement was deemed void *ab initio* for lack of authority.

There was no ratification of the invalid Exclusive Agreement by V.I.P.C. The corporation never received any funds under the Exclusive Agreement nor had they accepted any benefits from Handtrade.com under said Agreement. In fact, the Cisco action was commenced by Davidsohn under the non-exclusive agreement and the legal fees and costs which defendants claim was a ratification were paid by Handtrade.com under the Non-Exclusive Agreement. Finally, V.I.P.C. received no funds arising from the alleged settlement in the Cisco Action nor any other benefits as a result of said settlement. V.I.P.C.,neither knew or authorized the alleged Cisco settlement.

The plaintiff has not played fast and loose with the Court. That contrary to the allegations of the defendant VMU, during discovery in this action, Davidsohn provided all documentation and testified before trial regarding the only valid license agreement that he as Chief Executive Officer and President of V.I.P.C., executed. This fact was obvious based upon the institution of the Richmond Action #1 which sought termination of the Non-Exclusive Agreement at the time of the commencement of this action for patent infringement. Clearly, had the plaintiff known that a Restated and

-2-

Amended Exclusive Agreement existed, there would be no need for the termination of the former Non-Exclusive Agreement.  Upon learning of the alleged existence of the Exclusive Agreement, V.I.P.C., instituted Richmond Action #2, utilizing the same Complaint as in Richmond Action #1, seeking  the termination of said Exclusive Agreement. Although inadvertently plead as a breach of contract action, the Court in Richmond Action #2 after review of the facts and circumstances surrounding the execution of the Exclusive Agreement, found the Exclusive Agreement void *"ab initio"* for lack of authority by V.I.P.C., to execute said Agreement. As such, the position taken by V.I.P.C., that the Exclusive Agreement was and is invalid was not inconsistent with the judgment entered in the Richmond Action #2. Accordingly, judicial estoppel does not apply in the case at bar.

-3-

## II. PROCEDURAL BACKGROUND

On May 20, 2005, V.I.P.C., filed a Complaint asserting infringement of U.S. Patent No. 5,606.361 (filed May 10, 1995) ("the '361 patent") and U.S. Patent No. 5,724,092 (filed Sept. 12, 1996) ("the '092 patent"). (Docket Entry No.1)

On June 17, 2005, V.I.P.C., commenced an action in the State of New York, Supreme Court, Richmond County against Handtrade.com for termination of a Non-Exclusive License Agreement of the 361 and 092 patents. (Richmond Action #1) (Ex. 16 ¶25 to Davidsohns Affidavit)

On September 29, 2005, VMU served its First Set of Requests for Production of Documents and First Set of Interrogatories to V.I.P.C., wherein VMU specifically requested all documents relating to the ownership, assignment, or other transfer of ownership of the patents-in-suit, as well as, all documents relating to any offers to license or licenses regarding any of the patents-in-suit and all license agreements, settlements, covenants not to sue and any negotiations thereto, that relate to the patents-in-suit. (Ex. A and B to defendants moving papers)

On December 29, 2005, V.I.P.C., responded to VMU's interrogatories and requests for production by identifying and producing the Non-Exclusive License Agreement between Handtrade.com and V.I.P.C. dated October 27, 1999. This was the only agreement that was authorized by the Board of Directors of V.I.P.C. (Ex. C to defendants moving papers)

-4-

On October 10, 2006, Davidsohn, as Chief Executive Officer and President of V.I.P.C., testified before trial, about the Non-Exclusive Agreement which was produced in discovery on December 29, 2005. Davidson's testimony was consistent and clear regarding his knowledge that this was the only agreement authorized by the Board of Directors of V.I.P.C. (Ex.19 and ¶30 to Davidsohn Affidavit)

On February 8, 2007, Cinoti testified before trial, about the existence of an alleged Exclusive Agreement which he produced for VMU's counsel at or prior to his deposition. Cinoti claimed he executed this Exclusive Agreement as Chief Executive Officer a President of V.I.P.C. (Ex. 20 and ¶31 to Davidsohn Affidavit)

On February 23, 2007, based solely upon the alleged Exclusive Agreement, defendant VMU moved this Court for summary judgment based upon lack of standing. (Docket Entry No. 21) This motion was subsequently adjourned  to April 16, 2007 to be submitted with defendants Motion to Seal.

 On March 12, 2007, commenced an action in the State of New York, Supreme Court, Richmond County against Handtrade.com for termination of the Exclusive License Agreement of the 361 and 092 patents. (Richmond Action #2) (Ex. E to defendants moving papers and ¶32 to Davidsohn Affidavit)

On August 17, 2007, V.I.P.C., received an Order in Richmond Action #2 declaring the Exclusive Agreement terminated as of the date of its execution, August 10, 2000 and setting the matter down for a hearing on damages. (Ex. F to defendants moving papers)

On August 21, 2007, counsel for V.I.P.C., notified this Court of the default judgment entered in Richmond Action #2 and provided the Court and counsel for VMU with a copy of said Order. (Docket Entry No.72)

On August 31, 2007, this Court issued an Order denying defendants motion for summary judgment, without prejudice, and staying the instant action for 90 days pending the final outcome of Richmond Action #2 (Docket Entry No. 76)

On October 9, 2007, based upon the testimony of Davidsohn at the inquest on damages in the Richmond Action #2, JHO Lester Sacks issued a Decision and Order finding the Exclusive Agreement void *ab initio* for lack of authority on the part of Cinotti to enter in said Agreement. (Ex. H to defendants moving papers and ¶37 of Davidson Affidavit)

On November 14, 2007, based upon the Decision and Order of JHO Lester Sacks dated October 9, 2007, judgment was entered in Richmond Action #2 deeming the Exclusive Agreement void *ab initio* for lack of authority. (Ex. I to defendants moving papers and ¶38 of Davidsohn Affidavit)

On February 5, 2008, pursuant a telephone conference and agreement of the parties, this Court issued an Order providing for the re-presentment of defendants motion for summary judgment. (Docket Entry No. 82)

-6-

III.   **V.I.P.C. HAS STANDING TO COMMENCE AND PROSECUTE THIS ACTION FOR PATENT INFRINGEMENT**

**(A)   Legal Standard on Motion for Summary Judgment Based Upon Lack of Standing**

Defendant VMU moves this Court for summary judgment pursuant to Federal Rule 56(c) alleging lack of standing. Summary judgment is appropriate only if the pleadings, depositions, discovery, responses together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Conroy v. Reebok Int.l, Ltd. 14 F. 3rd 1570.  In determining whether there remains any actual issues of factual dispute, the Court must resolve all reasonable doubts in favor of the non-moving party. Meyer v. Riegel Prods Corp. 720 F. 2d 303, 307 (3rd Cir. 1983)

Under Article III Section 2 of the Constitution the jurisdiction of federal courts is limited to actual cases or controversies. U.S. Const. Art. III §2 Raines v. Byrd, 521 US. 811, 818 (1997) Standing is an element of jurisdiction. Raines, supra at 818 In Society Hill Towers Owners' Association v. Rendell, 210 F. 3rd 168 (3rd Cir. 2000) the Court found the following elements for constitutional standing: (1) plaintiff must suffer an injury in fact or invasion of legally protected interest; (2) there must be a causal connection with the injury and the complained of conduct traceable to the defendant and not the result of an independent action of some third party; and, (3) it must be likely that the injury will be redressed by a favorable decision. Society Hill Owners' Association, supra at 175-176

-7-

In the case at bar, there is no dispute that as the owner of the 361 and 092 patents, V.I.P.C., has a legally protected interest against in said patents which it has alleged in its Complaint were infringed by the actions of the defendant VMU herein. Moreover, the invasion of their legally protected interest in said patents has been alleged to have caused them harm and injury directly related and caused by their infringement. Finally, proof of the infringement of their legally protected interest will more than likely result in a judgment in favor of the plaintiff herein. (Docket Entry No.1)

Defendant contends, however, that based upon the Exclusive License Agreement, V.I.P.C., lacks prudential standing for it has assigned its rights and/or divested its right to institute this litigation to Handtrade.com. FilmTec Corp., v. Allied Signal Inc., 939 F.2d 1568 That based upon the fact that the Exclusive License Agreement was invalid and terminated as a matter of law, plaintiff maintains prudential standing and the right to institute this action for patent infringement. Textile Prods., Inc., v. Mead Corp., 134 F. 3d 1481

**(B) The Exclusive Agreement Was Invalid And Terminated As A Matter Of Law**

It is undisputed that the Exclusive Agreement with Handmade was executed by Cinotti, on August 10, 2000, without the knowledge, authority and/or consent of Davidsohn while an action for control was pending in New York State Court. (Ex."9" and ¶16 to Davidson Affidavit)  It is further undisputed that Cinotti executed the Exclusive Agreement as Chief Executive Officer/President of V.I.P.C., based upon his alleged election to said position at an April 7, 2000 Annual Meeting of Shareholders.

-8-

(¶13 to Davidsohn Affidavit) Further, it is undisputed that on August 31, 2000, Cinoti's election of Directors and Officers at the April 7, 2000 Annual meeting of Shareholders was found null and void as a matter of law. (Ex. "10" and ¶17 to Davidson Affidavit) The determination by the New York Court was appealed and the Order unanimously affirmed (Ex. "13" and ¶20 to Davidsohn Affidavit) Finally, it is undisputed that Handtrade was aware of the New York Action for control and the Decision and Order of the Court above. (Ex. S to Defendant's Motion for Summary Judgment")

It is undisputed that prior to the Annual Meeting of Shareholders held on April 7, 2000, Davidsohn was Chief Executive Officer/President of V.I.P.C. (See Ex. 3 and ¶7 to Davidson Affidavit) The Decision/Order of the New York County declared Cinotti's Board of Directors and his election as Chief Executive Officer/President null and void leaving Davidsohn as Chief Executive Officer/President.

That based upon the Decision and Order of the New York Court, Cinotti had no actual authority to enter into the Agreement as Chief Executive Officer and/or President of V.I.P.C. He essentially never held the position of Chief Executive Officer and President and therefore, never had actual authority to enter into the Exclusive Agreement. TJI Realty Inc. v. Harris, 250 A.D.2d 596; West view Hills v. Lizan Realty, 6 N.Y 2d 394. It is undisputed, that Cinotti never executed another agreement with Handtrade after the Decision/Order of August 31, 2000 in any other capacity. However, defendant VMU claims that Cinotti was Secretary/Treasurer of V.I.P.C., and therefore, had the right to bind V.I.P.C., as an officer of the plaintiff corporation. In fact, Cinotti was not Secretary/Treasurer of V.I.P.C., on August 10, 2000. (Ex. 3 and ¶7 to

-9-

Davidsohn Affidavit) Moreover, assuming arguendo, he maintained that position, he did

not execute the Exclusive Agreement as Secretary/Treasurer. (Ex. 9) Finally, by the

terms of the Agreement and as a condition to its enforcement, Cinotti was required to

provide a Resolution of the Board of Directors of V.I.P.C., and Minutes of a Meeting

approving said Agreement. V.I.P.C., has never held a meeting nor issued a Resolution

regarding the Exclusive Agreement. (Ex. 9 and ¶16 to Davidsohn Affidavit)

It was Davidsohn, as Chief Executive Officer/President of the corporation who

had actual and apparent authority to make contracts on behalf of the corporation. Odell

v. 704 Broadway Condominium, 284 A.D.2d 52 (1st Dept. 2001); Spitzer v. Born, Inc.,

194 A.D. 739 (1st Dept. 1921) Apparent authority exists even when the President does

not have actual authority to perform such acts. Odell v. 704 Broadway Condominiun,

supra, Wishnov w. Kingsway Estates, Inc., 26 A.D. 61 (1st Dept. 1966) A contract that is

entered into by a corporate president with a party who had knowledge of the limitations

on said presidents authority, is not binding,. Odell v. 704 Broadway Condominium,

supra; Traster Marbel Co., v. Brown Brothers, Inc., 159 A.D. 485 (1st Dept 1913)

Accordingly, even if Cinotti held the position of Chief Executive Officer/President at the

time he executed the Exclusive Agreement, which has been denied herein, since

Handtrade was aware of and had actual knowledge of the New York Action and the

dispute for control, the contract was not binding upon V.I.P.C. (Ex. S to defendants

moving papers) Dillon v. Anderson, 43 N.Y. 232; Parsons v. Sutton, 66 N.Y. 92. Finally,

-10-

even   acceptance of the benefits of a contract made without authority does not change its invalidity as a matter of law. City of Long Beach v. New York City, 286 N.Y.382.

In an attempt to resurrect, reaffirm and/or ratify the Exclusive Agreement which was signed without actual and/or apparent authority, and which was a nullity, Cinotti on September 14, 2000 attempted to solicit "written consents" from shareholders. (Ex. 7 and ¶12 to Davidson Affidavit) This procedure violated the By-Laws of the corporation. (See Exhibit "1", Article II, Paragraph 8)

Specifically, Article II, Paragraph "8" of the By-Laws of V.I.P.C., formally known as Neurotek Research Inc., states as follows:

> Section 8 - Action Without a Meeting:
>
> "Unless otherwise provided for the Articles of Incorporation of the Corporation, any action to be taken at any annual or special shareholders' meeting, may be taken without a meeting, without prior notice and without a vote if written consents are signed by a majority of the shareholders of the Corporation, except however, if a different proportion of voting power is required by law, the Articles of Incorporation or these By-Laws, than the proportion of written consents is required. Such written consents must be filed with the Minutes of the proceedings of the shareholders of the corporation."

Although Cinotti states he was proceeding under Article II, Section 6, of the By-Laws  that Section does not provide for a vote by "written consent". That provision requires a meeting of shareholders that was never called on Notice to Shareholders (See Exhibit 1 - Article II, Paragraph "6")

-11-

Notwithstanding, under Article II Section 8, Cinotti was required to obtain the "written consents" of a majority of <u>all</u> issued and outstanding common shares to reaffirm or ratify the Exclusive Agreement dated August 10, 2000, if same could legally be ratified. When a contract is found to be legally void or invalid, the contract cannot be ratified. <u>Strauss Lynotyping Co.v. Schwalbe</u>, 159 A.D. 347, 144 N.Y.S.549 Based upon the number of shares obtained through written consent, Cinotti failed to obtain a majority of shares and his ratification was null and void. (Ex. 7 and 11 and ¶18 to Davidsohn Affidavit)

In fact, pursuant to Article II, Section 8 of the By-Laws, Cinotti was required to obtain a two-third (2/3) vote of preferred shareholder before entering into a contract which involves the sale, lease and/or otherwise transfer of assets of the corporation (Ex. 5) The Preferred Stock Agreement which amended the Certificate if Incorporation states:

> 5. Restrictions and Limitations.
>
> "(a) At such time as any shares of Series A Preferred Stock remain outstanding, the <u>Corporation shall not, without the vote or written consent of the holders of at least sixty-six and two-thirds percent (66 2/3%) of the then outstanding shares of Series A Preferred Stock...</u>
>
> (iv) <u>Effect any sale, lease, assignment, transfer, or other conveyance of all or substantially all of the assets of the corporation</u> or any of its subsidiaries, or any consolidation or merger involving the corporation or any of its subsidiaries, or any reclassification or other change of any stock, or any recapitalization of the Corporation..."

That an assignment is the complete transfer to another party of an interest or an

-12-

undivided part of that interest.  Biosynexus, Inc., v. Medimmune, Inc., 816 N.Y.S.2nd

693. Griffey v. NY Cent. Ins. Co., 100 N.Y. 417, 422 (1885); Sardanis v. Sumitomo

Corp., 282 A.D.2d 322, 323 (1st Dept 2001) Coastal Commercial Corp. v. Samuel

Kosoff & Sons, Inc., 10 A.D.2d 372, 376 (4th Dept. 1960). When determining whether an

agreement qualifies as an assignment or license, the legal effect of the agreement must

govern. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875

(Fed. Cir. 1991). It makes no difference whether the parties call the agreement a

license in the granting clause of the agreement as the document evidencing the

agreement must be examined in its entirety to determine its legal effect. (See 2-15

Milgrim on Licensing §15.01 (2005). If the agreement transfers "all substantial rights" to

a patent, then it qualifies as an assignment. Vaupel Textilmaschinen KG, 944 F.2d at

875. Examination of the Exclusive Agreement shows that Cinotti intended to effect an

assignment to Handtrade of substantially all its rights to the 361 and the 092 Patents

which were the sole assets of the plaintiff corporation. (Ex. 4 and ¶8 to Davidsohn

Affidavit) Cinotti, albeit without the knowledge, authority and/or consent of V.I.P.C.,

granted to Handtrade the full right to use the patents, including the rights to make, use

and sell the technology for the development and sale of products. Cinotti's grant of

patent rights was exclusive to Handtrade and encompassed the entire United States.

Such a grant qualifies as an assignment under the third prong of the Waterman

standard because it is an "exclusive right under the patent within and throughout a

specified part of the United States" Waterman v. McKenzie, 138 U.S. 252, 255.

That pursuant to its own terms, the Exclusive Agreement required that prior to its execution, that V.I.P.C., deliver a Resolution of the Board of Directors approving the Agreement; a Legal Opinion that it was authorized to enter the Agreement; and, a copy of the Assignment of Patents by Cinotti and Davidsohn to V.I.P.C. It stated that the warranties and/or representations contained in the Agreement were a condition precedent to its execution. (Ex. 9  p. 11) However, no meeting of the Board of Directors of V.I.P.C., nor any resolution of said Board has been issued and the Legal Opinion was allegedly issued on September 13, 2000 after the execution of the Agreement. Accordingly by its own terms, the Exclusive Agreement was never effective.

Furthermore, defendant VMU argues that notwithstanding the validity of the Exclusive Agreement, V.I.P.C., accepted the benefits of the Agreement and the settlement in the Cisco Action.  In fact, Davidsohn and Cinotti both testified that no funds were received by V.I.P.C., under the Exclusive Agreement. (Ex.9, 19 and 20 and ¶30 and ¶31 to Davidsohn Affidavit) Cinotti, testified further, that Handtrade.com made a payment to the attorneys in the Cisco Action which benefitted V.I.P.C.  (Ex. 20 p. 24) However, the payment to which Cinotti refers, was not made under the Exclusive Agreement but in fact, as evidenced by the letter dated July 13, 2000 by V.I.P.C.'s counsel, the payment was made on July 10, 2000 prior to the execution of the Exclusive Agreement. (Ex. M of defendants moving papers) Accordingly, V.I.P.C., never received any funds under, pursuant to and/or arising out of the alleged Exclusive Agreement. As such, there was no ratification of said Agreement.

-14-

Finally, based upon the judgment in the New York Action of the Supreme Court Richmond County, (Richmond Action #2) declaring the Exclusive Agreement void *"ab initio"* for lack of authority by Cinotti to enter into said Agreement, the Exclusive Agreement has been deemed invalid as a matter of law. (Ex. H and I and ¶37 and ¶38 of Davidsohn Affidavit)

That based upon the facts and legal documents set forth herein, defendants motion for summary judgment based upon lack of standing as a result of the Exclusive Agreement must be denied.

## IV.  JUDICIAL ESTOPPEL IS INAPPLICABLE TO THE CASE AT BAR

It has always been the plaintiffs position that the only valid agreement in existence at the time of the institution of this action for patent infringement was the Non-Exclusive Agreement executed by John Davidsohn as Chief Executive Officer and President of V.I.P.C. That position was confirmed with the exchange of plaintiffs Response to defendants First Set of Interrogatories and Production of Documents dated December 29, 2005.  (Ex. C to defendants moving papers) That position was further confirmed at the deposition of Davidsohn held on October 10, 2006.  At no time did the plaintiff "conceal" any information regarding the existence of the Exclusive Agreement of which they had never seen and/or authorized.

In fact, V.I.P.C.'s Board of Directors authorized the commencement of an action to terminate the Non-Exclusive Agreement at or about the institution of this action for patent infringement. There would be no need to terminate the Non-Exclusive Agreement had the Board of Directors of V.I.P.C., known of the existence of the Exclusive Agreement, which allegedly amended and restated the Non-Exclusive Agreement. Only after learning of the existence of the Exclusive Agreement at the deposition of Cinotti held on February 8, 2007, was a determination made by the Board of Directors of V.I.P.C., to terminate that Agreement as well.

Although inadvertently plead as a breach of contract action, the Supreme Court in Richmond Action #2 after taking the testimony of Davidsohn at an inquest on damages, determined based on his testimony that the Exclusive Agreement was void

-16-

*ab initio* for lack of authority by Cinotti in the execution of said Agreement. As such, the pleading defect was excused and the complaint amended to conform to the proof. ( 13 to Hankin Declaration) Obviously, by his testimony at the Inquest, Davidsohn had no intent to deceive the Court herein and so Judicial Estoppel should not apply. Ryan Operating G.P. v. Santiam Midwest Lumber Co., 81 F.3d 355 Accordingly, plaintiff's position on this motion for summary judgment that the Exclusive Agreement was invalid and the judgment of the Supreme Court in Richmond Action #2 that the Agreement was declared void *ab initio* for lack of authority, are completely consistent.

The Supreme Court in Davis v. Wakelee, 156 U.S.680, 689, created the concept of judicial estoppel holding that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simple because his interests have changed, assume a contrary position. The third circuit adopted this holding in Davis, supra, in Scarano v. Central Railroad Co. 203 F.2d 510, 513 (3rd Cir. 1953) wherein the Court held the doctrine of judicial estoppel represents a measure of protection of the integrity of the Courts, designed to prevent litigants from "playing fast and loose" with the Courts. In that regard, a Court may apply the doctrine in a case where "intentional self-contradiction is being used as a means of obtaining an unfair advantage in a forum provided for suitors seeking justice. Scarano, 203 F.2d at 513.

In Zenith Laboratories Inc.v. Bristol Meyers Squibb Co., 1991 WL 267892, 24 U.S.P.Q. 2nd 1641 (D.N.J. 1991), this Court after review of other cases and rulings previously rendered in the District, held that the requirement that a party must

-17-

"successfully" assert a legal position in one proceeding to be barred from asserting an inconsistent position in a latter proceeding seems to be the essence of judicial estoppel because in other forms of estoppel, reliance is the basis for the bar. With judicial estoppel, it is the Courts reliance that forms the basis for the estoppel. <u>Zenith Laboratories Inc.</u>, supra,;<u>Jackson Jordan Inc., v. Plasser American Corp.</u>, 747 F. 2d 1567, 1579 (Fed. Cir. 1984) The District Court in <u>Zenith Laboratories Inc.</u>, supra further held that unless a Court has relied upon a party's assertion in granting some form of relief, there seems no sufficiently strong reason to bar a party from changing its position.

At no time prior to this motion has this Court adopted a position set forth by the plaintiff or relied upon any statement made by the plaintiff herein relative to the issue of the validity of the Exclusive Agreement and whether or not the plaintiff lacks standing herein.

New Jersey Courts have refused to apply judicial estoppel where a party adopts an inconsistent position in good faith. <u>C.R. v. J.G.</u>, 306 NJ Super. 214, 238-39 (Holding that Judicial Estoppel requires knowledge of the facts that would not apply where a parties statement in prior litigation was based upon ignorance of the facts and not upon an attempt at deception. <u>In Re: Chambers Development Co.</u>, 148 F.3rd 214 229 (3rd Cir. 1988) Or, where the statements claimed inconsistent are legal conclusions as opposed to factual inconsistencies. <u>Cleveland v. Policy Management Sys Corp.</u>, 526 U.S.795 (1999)  If there is no evidence of an intent to play fast and loose with the Courts, there is no reason to apply the doctrine). <u>Palcsesz v. The Midland Mutual Life Insurance Co.</u>, 87 F. Supp. 2nd 409 (DNJ 3-14-00)

## V.  THE DEFAULT JUDGMENT IN THE NEW YORK ACTION IS ENTITLED COLLATERAL ESTOPPEL EFFECT

The Judgment obtained in the New York action, Richmond Action#2, decaring the the exclusive agreement void "*ab initio*" as between V.I.P.C. and Handtrade. Com, although obtained on default is valid where the defaulting party is give an adequate opportunity to litigate. (Exhibit "I") The Chief Executive Officer of Handtrade, John Notariano, appeared on the motion for default on 2 occasions requesting time to obtain counsel to oppose VIPC's motion for default.  On the third appearance, the defendant failed to appear in person or by counsel, so the Court rendered judgment in favor of VIPC on default. ( 12 to Hankin Declaration)

A "judgment by default or by consent, such as a judgment by confession, must be given res judicata effect, precluding new suit on the same claim. Siegel, N.Y. Prac., §451 at 597. The "more difficult question" is whether a default judgment should be given the "more influential effects of collateral estoppel as well." Id. New York answers this question in the affirmative: default judgments are given collateral estoppel effect. Id.: In re: Iannelli, 12 B.R. 561, 563 n. 6 (Bankr.S.D.N.Y. 1981). Professor Siegel explains:

"A collateral estoppel lies for any issue duly pleaded in and legitimately a part of the action in which the default was suffered Actual contest is therefore unnecessary in order for a judgment to get collateral estoppel effect; the showing required is only that the issues were necessary to the determination, contested or not, and this is true in

-19-

New York of both the default judgment and the consent judgment. Siegel, N.Y. Pract.,
§451 at 597-98; Kellerin v. Andrijevic, 825 F.2d 692, *cert. denied*, 484 U.S. 1007.

A judgment of a Court having jurisdiction of the parties and of the subject matter
operates as *res judicata*, in the absence of fraud or collusion, even if obtained upon a
default. Morris v. Jones, 329 U.S.545 Such a judgment obtained in a sister state is
entitled to full faith and credit in another state, though the underlying claim would not be
enforced in the state of the forum. Christmas v. Russell, 5 Wall, 290; Fauntleroy v. Lum,
210 U.S. 230

A Federal Court must apply the rules of preclusion of the State of which the prior
judgment was rendered. Sullivan v. Gagnier, 225 F.3rd 161, 166. (2nd Cir. 2000) In fact,
28 U.S.C. Section 1738 requires Federal Courts to give the same preclusive effect to
state court judgments that those judgments would be given in the Courts of the State
from which the judgments emerged. Council v. Better Homes Depot Inc, 2006 WL
2376381

The Judgment declaring the Handtrade exclusive agreement void in Richmond
Action #2 , at a minimum, is binding and enforcible against Handtrade.  Accordingly, the
defendant, VMU has not and should not be permitted to challenge this Judgment.

## VI. CONCLUSION

The Exclusive Agreement was invalid as a matter of law. It was executed by Cinotti who had no legal authority, apparent and/or actual. The Agreement was not approved by the preferred shareholders of V.I.P.C. The conditions precedent required in the Agreement were never met.  The plaintiff never benefitted from nor ratified the Agreement. The Supreme Court in the New York Action declared the Agreement void *ab initio* for lack of authority.

Judicial Estoppel does not apply to the case at bar. The plaintiff responded appropriately to all discovery demands.   The action to terminate the exclusive agreement was commenced in good faith and without any intent to deceive the Court. The positions taken by the plaintiff are not inconsistent. The plaintiff has not played fast and loose with the Court and the Court has not adopted any position of the plaintiff to their detriment.

The judgment of the Supreme Court, New York in Richmond Action #2 declaring the Exclusive Agreement invalid should be given preclusive effect in this action. Accordingly, the plaintiff has standing to maintain this action.

Dated: New York, New York
         March 24, 2008

                              Respectfully Submitted,


                              s/ Mark L. Hankin,                          
                              Mark L. Hankin, Esq.
                              HANKIN,  HANDWERKER & MAZEL, P.L.L.C.
                              Attorney for Plaintiff & Counterclaim Defendant
                              Visual Interactive Phone Concepts Inc.
                              7 Penn Plaza, Suite 904
                              New York, New York 10001
                              (212) 349-1668

Mark L. Hankin, (MH1824)
Hankin, Handwerker & Mazel, PLLC
7 Penn Plaza, Suite 904
New York, New York 10001
(212) 349-1668
*Attorneys for Plaintiff*
Visual Interactive Phone Concepts, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------------------x

VISUAL INTERACTIVE PHONE CONCEPTS,
INC.,

<u>Document Electronically Filed</u>

                    Plaintiff,

      -against-

CIVIL ACTION NO.
<u>05-2661 (MLC)</u>

VIRGIN MOBILE USA, LLC

                 Defendant.
-----------------------------------------------------------------x

VIRGIN MOBILE USA, LLC,

**ORDER DENYING
SUMMARY JUDGMENT**

              Counterclaim-
              Plaintiff,

      -against-

VISUAL INTERACTIVE PHONE CONCEPTS,
INC.,
              Counterclaim-
              Defendant.
-----------------------------------------------------------------x

      This matter having been brought before the Court by counsel for Virgin Mobile,

USA, LLC., seeking summary judgment dismissal of the complaint brought against it by

Visual Intractive Phone Concepts, Inc., based upon lack of standing and judicial

estoppel.

      IT IS on this _____ day of _____ 2008,

ORDERED:

1.    The motion to dismiss the complaint brought by Visual Interactive Phone Concepts, Inc. against Virgin Mobiles USA, LLC in the above captioned action is hereby denied.

2.    Visual Interactive Phone Concepts, Inc., is hereby awarded its reasonable attorneys' fees and costs associated with its opposition to the motion for summary judgment based upon lack of standing and judicial estoppel and within thirty (30) days of entry of this order, Visual Interactive Phone Concepts, Inc., shall submit an affidavit of services.


_____

MARY L. COOPER, U.S.D.J.