Cynthia V. Fitzgerald
Daniel A. DeVito
Marti A. Johnson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735.3000
Attorneys for Defendant, Counterclaim-Plaintiff,
Virgin Mobile USA, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VISUAL INTERACTIVE PHONE CONCEPTS, INC., | : | <u>Document Filed Electronically</u> |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| VIRGIN MOBILE USA, LLC, | : | |
| *Defendant.* | : | CIVIL ACTION NO. 05-2661 (MLC) |
| | : | |
| | : | Motion Date: April 7, 2008 |
| VIRGIN MOBILE USA, LLC, | : | |
| *Counterclaim-Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| VISUAL INTERACTIVE PHONE CONCEPTS, INC., | : | |
| *Counterclaim-Defendant.* | : | |
| | : | |

## BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF VIRGIN MOBILE USA, LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.      Judicial Estoppel Warrants a Dismissal of This Action ........................................ 1

II.     The State Court Default Judgment Has No Preclusive Effect ............................... 6

III.    The Exclusive Agreement Deprives VIPC of Standing ......................................... 7

IV.     The Exclusive Agreement was Valid ...................................................................... 7

        A.      Cinotti Had Authority As VIPC's Secretary/Treasurer ............................ 8

        B.      Cinotti Had Authority As A Chairman Of The Board ............................. 10

        C.      Cinotti Had Authority Based On His Prior Business Dealings ............... 10

        D.      A Vote of Preferred Shareholders Was Unnecessary ............................. 11

        E.      VIPC Ratified the Agreement by Accepting Benefits Conferred ........... 13

V.      The State Court Action Cannot Confer Standing Retroactively .......................... 15

VI.     CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                      **Page(s)**

*AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219 (D.N.J. 1992)........................................ 4

*In re Chambers Development Co.*, 148 F.3d 214 (3d Cir. 1998)............................... 4

*Cinotti v Davidsohn*, No. 10248/00 (N.Y. Sup. Ct. Oct. 11, 2000) ......................... 8

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795
  (1999) ................................................................................................................ 5

*Dillon v. Anderson*, 43 N.Y. 231 (N.Y. 1870) ......................................................... 10

*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d
  774 (Fed. Cir.), *amended*, 104 F.3d 1296 (Fed. Cir. 1996) ............................... 15

*Hallock v. State of New York*, 474 N.E.2d 1178 (N.Y. 1984)................................. 10

*In re Iannelli*, 12 B.R. 561 (Bankr. S.D.N.Y. 1981) ................................................ 6

*Jackson Jordan, Inc. v. Plasser Am. Corp., 747 F.2d 1567* (Fed. Cir.
  1984).................................................................................................................. 5

*Jourdan v. Long Island Railroad*, 22 N.E. 153 (N.Y. 1889) ................................. 13

*LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc*, 2003 WL
  21671812 (S.D.N.Y 2003) ............................................................................... 15

*Odell v. 704 Broadway Condominium*, 284 A.D.2d 52, 728 N.Y.S.2d
  464 (App. Div. 2001) ....................................................................................... 11

*Palcsesz v. Midland Mutual Life Insurance Co.*, 87 F. Supp. 2d 409
  (D.N.J. 2000).................................................................................................... 5

*Parsons v. Sutton*, 66 N.Y. 92 (N.Y. 1876)............................................................. 10

*Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir.
  1953).................................................................................................................. 5

*Seif v. City of Long Beach*, 286 N.Y. 382, 36 N.E.2d 630 (1941) ......................... 13

*Strauss Linotyping Co. v. Schwalbe*, 159 A.D. 347, 144 N.Y.S. 549
    (App. Div. 1913) ............................................................................ 13

*Su Mei, Inc. v. Kudo*, 755 N.Y.S.2d 481 (N.Y. App. Div. 2003) ........................... 15

*Traitel Marble Co. v. Brown Bros.*, 144 N.Y.S. 562 (App. Div. 1913) .................. 11

*Visual Interactive Phone Concepts, Inv. v. Big Planet et al.*, No. 99-
    20936 (N.D. Cal. Dec. 6, 2000) ...................................................... 14

*Watrous v. Autera*, 726 N.Y.S.2d 595 (App. Div. 2001) ......................................... 6

*Zenith Labs. Inc. v. Bristol Meyers Squibb Co.*, 1991 WL 267892
    (D.N.J. 1991) ................................................................................... 4

Virgin Mobile USA, L.P., formerly Virgin Mobile USA, LLC, ("VMU") submits this brief in further support of its motion for summary judgment and to address certain points in Visual Interactive Phone Concepts, Inc.'s ("VIPC") Brief in Opposition to Summary Judgment ("Opposition Brief").

## I.  Judicial Estoppel Warrants a Dismissal of This Action

VIPC filed a state court action asserting the validity of the Exclusive Agreement while simultaneously arguing its invalidity before this Court.  Tellingly, VIPC does not contest that these positions are factually inconsistent.  Instead, it now says, in hindsight, that it made a mistake.  VIPC asserts that judicial estoppel should not apply because:  (a) VIPC filed its state court action as a breach of contract action in error; (b) VIPC ultimately failed in its pursuit of its breach of contract claim; and (c) this Court did not adopt a position in reliance on its inconsistent filings.  Each of these arguments clearly mischaracterize the facts of this case and the law of this Circuit.

VIPC claims here *for the first time* that it "inadvertently plead [sic] [its state court action] as a breach of contract action."  (Opp'n Br. at 16.)  But VIPC's own statements and actions belie its eleventh-hour attempt to reverse course.

First, VIPC filed a letter with this Court stating that its inconsistent filings represented a strategy decision to "[take] the alternative position" – not an

1

"error" in the state court pleadings.  (Ex. T at 1.)

Second, VIPC attempts to bolster its "error" argument by claiming it filed its state court action "utilizing the same Complaint as in [a prior state court action against HandTrade (referred to in VIPC's Opposition Brief as "Richmond Action #1")]" (Opp'n Br. at 3).  But a comparison of the two complaints clearly refutes this statement.  VIPC may have used its prior complaint as a template, but not without thoroughly editing the document before filing.  Fully seven paragraphs in this short complaint differ from the prior complaint (Ex. E at paras. 5, 9, 13, 14, 16, (b), (c)), revealing that VIPC carefully drafted this second complaint to demand every royalty payment, lump sum, and stock grant that HandTrade owed VIPC under the Exclusive Agreement.  (Ex. E at paras. 13, 14, 16, (b), (c).)

Third, the sheer number of times VIPC's inconsistent – and supposedly "inadvertent" – filings were drawn to its attention without VIPC taking any action to correct its alleged error, demonstrates that VIPC's inconsistent filings were in fact a strategic attempt to obtain a windfall recovery by using the Exclusive Agreement as both a sword and a shield.  The relevant events follow:

- On February 23, 2007, VMU filed a motion to dismiss asserting that VIPC lacked standing due to the existence of the Exclusive Agreement.  (Ex. U.)

- On March 12, 2007, VIPC filed a breach of contract action in NY State Court asserting the validity of the Exclusive Agreement and seeking extensive damages.  (Ex. E.)

- On March 26, 2007, VIPC filed a response to VMU's motion in this Court

2

asserting the invalidity of the Exclusive Agreement.  (Ex. V.)

• On June 1, 2007, VMU filed a letter with this Court highlighting VIPC's inconsistent filings and suggesting that VIPC's state court action constituted an admission as to the validity of the Exclusive Agreement.  (Ex. W.)

• On June 4, 2007, VIPC filed a responsive letter with this Court, declining to defend its inconsistent positions and instead arguing that if it succeeded in obtaining an order from the state court terminating the Exclusive Agreement for nonpayment of royalties, then VMU's motion for summary judgment would become moot.  (Ex. X.)

• On August 17, 2007, the New York State Court entered a default judgment terminating the Exclusive Agreement, holding that HandTrade breached the terms of the agreement, and sending the matter to a damages inquest.  (Ex. F.)

• On August 21, 2007, VIPC filed a letter with this Court attaching a copy of this default judgment and again declining to explain the inconsistencies in its positions before the two courts.  (Ex. Y.)

• On August 27, 2007, VMU electronically mailed counsel for VIPC a copy of its anticipated presentation for oral argument in its motion to dismiss, which included slides detailing VIPC's inconsistent filings and the case law and arguments supporting the application of judicial estoppel.  (Ex. Z.)

• On August 29, 2007, VMU filed a letter further addressing VIPC's inconsistent filings and raising the issue of judicial estoppel.  (Ex. AA.)

• On August 30, 2007, VIPC filed a responsive letter arguing that its inconsistent filings reflected **a strategy decision to take an "alternate position,"** but that judicial estoppel should not apply because this Court had not been "misled" by its actions and VMU had not "relied on any misrepresentation made by the plaintiff herein." (Ex. T.)

• On September 4, 2007, VIPC filed its Notice for Inquest, demanding a judgment that the Exclusive Agreement had been breached, a monetary award in excess of $300,000, an accounting of HandTrade's gross revenues, and royalties of 1% of this gross revenue.  (Ex. G.)

There can be no doubt that VIPC purposefully pursued inconsistent positions in different courts for its own potential monetary gain and at the expense of judicial integrity.  By attempting to use the Exclusive Agreement both defensively and offensively, VIPC tried for a windfall, both the freedom to pursue an action against VMU in this Court *and* an award of back royalty payments from HandTrade in the state court action.  This is precisely the type of conduct that the doctrine of judicial estoppel was designed to penalize and prevent.

In addition to mischaracterizing the relevant facts, VIPC misstates the law.  VIPC argues, citing *Zenith Labs.*, that judicial estoppel should not apply because it neither won a windfall in state court nor convinced this Court to rely on its inconsistent arguments.  (*See* Opp'n Br. at 17–18.)  Yet, *Zenith Labs.* has been expressly repudiated, as courts in this circuit have clarified that judicial estoppel requires neither success, nor judicial reliance.  *See AFN, Inc. v. Schlott, Inc.*, 798 F. Supp. 219, 227 n.12 (D.N.J. 1992) (expressly rejecting *Zenith Labs.*, and noting that "[a] party's cavalier switch of position from one case to the next or from one proceeding to the next is inimical to the integrity of the judicial system, regardless of whether the court affirmatively relies on the representation"); *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998) (cited in Opp'n Br. at 18) ("The party asserting the [judicial] estoppel is not required to demonstrate detrimental reliance upon the prior representation.  In addition, the party to be estopped need not have

4

benefited from its earlier position.").

VIPC's actions are precisely the type of conduct the courts sought to prevent in *Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir. 1953) and its progeny. *AFN*, for example, offers nearly identical facts to those at hand: a party asserted the invalidity of a license before the District of New Jersey while nearly simultaneously asserting its validity in a state court action. 798 F. Supp. at 222-3. The *AFN* court held that the offending party was judicially estopped from contesting the validity of that agreement. *Id.* at 227 (stating that the defendant's attempt to argue the invalidity of a license agreement, having just argued for damages pursuant to that same agreement, was exactly "the type of 'evil the courts should not tolerate'"). Faced with the realization that it cannot distinguish *AFN*, VIPC attempts to cloud the issue by misstating courts' holdings and citing non-precedential, outdated, and criticized cases.[1]

------

[1]   VIPC erroneously cites *Palcsesz v. Midland Mut. Life Ins. Co.*, 87 F. Supp. 2d 409, 414 (D.N.J. 2000) (cited in Opp'n Br. at 18) (applying judicial estoppel where the plaintiff explained her inconsistent filings as attorney error); *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 802-03 (1999) (cited in Opp'n Br. at 18) (holding narrowly that in the specific context of a party's claim both for Social Security benefits and workplace accommodation under the ADA, an explanation of the apparent inconsistency is necessary in order to avoid judicial estoppel)*; Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567 (Fed. Cir. 1984) (cited in Opp'n Br. at 18) (applying Fourth Circuit law).

## II.   The State Court Default Judgment Has No Preclusive Effect

Contrary to VIPC's claims, New York courts consistently hold that

default judgments lack issue-preclusive effect. *Watrous v. Autera*, 726 N.Y.S.2d

595, 596 (App. Div. 2001) ("Collateral estoppel may only be accorded to litigated

judgments, not to default judgments.").[2]  In fact, VIPC itself cites *In re Iannelli*, 12

B.R. 561 (Bankr. S.D.N.Y. 1981), which held that collateral estoppel does not

apply where "no issues were actually litigated because the prior judgment was

procured by default." *Id.* at 563.  VIPC relies on a footnote in *In re Iannelli*, which

noted that, at that time, New York courts afforded default judgments collateral

estoppel effect. *Id.* at 563 n.6.  However, *In re Iannelli* issued fully twenty years

prior to the cases cited by VMU for the proposition that collateral estoppel does

not apply to default judgments in New York—cases that VIPC cannot and does not

attempt to distinguish.  The fact is, the state court default judgment has no

preclusive effect.[3]

Even assuming, *arguendo*, that collateral estoppel applies to default

---

[2]   VIPC improperly conflates res judicata (claim preclusion) with collateral
      estoppel (issue preclusion); however, because res judicata clearly does not
      apply here, VMU will limit its discussion to collateral estoppel.

[3]   As discussed more fully in VMU's opening brief, the findings from the
      uncontested damages inquest in VIPC's state court action also have no
      preclusive effect here.  VIPC fails to address this issue at all.

judgments, it cannot apply here because VMU was not a party to the state court action, or in privity with one. VIPC argues that collateral estoppel "is valid where the defaulting party is give [sic] an adequate opportunity to litigate," (Opp'n Br. at 19) even though the record makes clear that *HandTrade*, not VMU defaulted, and that VMU had no opportunity to litigate the issue. VIPC goes on to argue – with no explanation or support – that because the judgment "is binding and enforceable against HandTrade," it also binds VMU. (Opp'n Br. at 20.) But VIPC does not even allege that privity exists between HandTrade and VMU, which, clearly, it does not. Without such privity, collateral estoppel cannot apply.[4]

## III.   The Exclusive Agreement Deprives VIPC of Standing

Under the Exclusive Agreement, VIPC retained no independent right to assert infringement unless required to do so by law. (Ex. D § 4, ¶ 4.) This definitively deprives VIPC of standing in this action. VIPC does not dispute this, arguing instead that it maintains standing because the Agreement is invalid. Thus, both parties agree: VIPC's standing hinges on the validity of the Agreement.

## IV.   The Exclusive Agreement was Valid

VIPC argues that Cinotti "had no actual authority to enter into the

---

[4]   Collateral estoppel also requires an identity of issues. VIPC fails to address this point. Regardless, as discussed more fully in VMU's opening brief, the issues in the state court action differ from those before this Court.

Agreement". (Opp'n Br. at 9.) Yet, the very cases VIPC cites show that Cinotti had authority by virtue of his: (i) position as Secretary/Treasurer; (ii) position as a Chairman of the Board; and (iii) prior course of dealing on VIPC's behalf. Each of these provides an independent basis for establishing his authority to act and to have entered into the Agreement.

### A.    Cinotti Had Authority As VIPC's Secretary/Treasurer

VIPC does not refute the case law cited by VMU for the proposition that Cinotti, as Secretary/Treasurer, had the authority to execute the Exclusive Agreement. Instead, VIPC claims now for the first time that Cinotti "was not Secretary/Treasurer of V.I.P.C., on August 10, 2000." (Opp'n Br. at 9.) In support, VIPC cites to a July 2000 filing listing Davidsohn as Secretary/Treasurer. (VIPC Ex. 3.) VIPC further argues that even if Cinotti was, in fact, Secretary/Treasurer, the signature page on the Agreement lists him as CEO/President; from this VIPC concludes, citing no support, that the Agreement is invalid.

The confusion over titles at VIPC resulted from the events of April 6-7, 2000, when Davidsohn and Cinotti both maneuvered to gain control of VIPC by staging separate elections. A court ultimately invalidated both elections. *Cinotti v Davidsohn*, No. 10248/00, slip op. at 3-4 (N.Y. Sup. Ct. Oct. 11, 2000) (VIPC Ex. 10) ("While Davidsohn's actions were perhaps more egregious than Cinotti's . . . [n]either individual has accomplished his goal of gaining control of [VIPC].").

As VIPC points out, after the court decision invalidating the elections, Davidsohn reverted to his prior position as CEO/President. (Opp'n Br. at 9.) Cinotti also reverted to his prior position of Secretary/Treasurer. (Ex. Q.) The next election occurred on April 12, 2004—nearly four years after the Exclusive Agreement was executed. (Davidsohn Aff., para. 23.) Regardless of what Davidsohn filed in the interim,[5] a valid election to remove Cinotti as Secretary/Treasurer did not occur until 2004. At the time the Agreement was executed, Cinotti remained, at a minimum, VIPC's Secretary/Treasurer, and thus he had authority to contract on VIPC's behalf.

Regarding Cinotti's title on the Agreement's signature page, when he signed it, the court had not yet ruled on the April elections. Thus, on the execution date, Cinotti believed he was VIPC's CEO/President, as per the April 7, 2000 election. It was only later that the court set aside that election. He signed the Agreement believing he was VIPC's CEO/President, though in hindsight he was still VIPC's Secretary/Treasurer. Regardless, he had authority to sign for VIPC.

---

[5] Between the April 6 and 7, 2000 elections and the October 11, 2000 court decision invalidating those elections, it appears that both Davidsohn and Cinotti assumed the validity of their preferred election and altered their company titles to reflect this. Thus in the time period prior to the October 11 decision, Davidsohn's Secretary of State filings and Cinotti's signature blocks reflect their beliefs as to their correct corporate titles, though these beliefs were later found to be incorrect in view of the October 11 court decision.

**B.     Cinotti Had Authority As A Chairman Of The Board**

VIPC does not deny that Cinotti served, during all relevant periods, as a Chairman of VIPC's Board of Directors.  In fact, VIPC fails to even address this issue.  Regardless, as is fully discussed in VMU's opening brief, it is clear that Cinotti's role as Chairman gave him the requisite authority to act.

**C.     Cinotti Had Authority Based On His Prior Business Dealings**

A corporate representative's authority may be established through a prior course of conduct.  *See Hallock v. State of N.Y.*, 474 N.E.2d 1178, 1181 (N.Y. 1984).  VIPC does not dispute Cinotti's prior course of dealings with HandTrade, including his execution of the companies' predecessor agreement.  Neither does it dispute that Cinotti managed VIPC's day-to-day financial and business affairs.

VIPC instead argues that because "HandTrade was aware of and had actual knowledge of" a court order denying judicial confirmation of the April 7, 2000 election, "the contract was not binding upon V.I.P.C."  (Opp'n Br. at 10.)  But VIPC cites no case law to support this contention.  Rather it inexplicably relies on a legal opinion *confirming* Cinotti's authority to enter the Agreement (Ex. S) and two wholly irrelevant cases from the 1870s that do not even address this issue.[6]

---

[6]  *Dillon v. Anderson*, 43 N.Y. 231 (N.Y. 1870) reversed a lower court decision regarding when a party to a contract received actual notice of the rescinding of that contract, and *Parsons v. Sutton*, 66 N.Y. 92 (N.Y. 1876) affirmed a lower

*(cont'd)*

VIPC also cites two inapposite cases as purported support of its assertion that "[a] contract entered into by a corporate president with a party who had knowledge of the limitations on said presidents [sic] authority, is not binding." (Opp'n Br. at 10.)  The first, *Odell v. 704 Broadway Condominium*, 284 A.D.2d 52, 728 N.Y.S.2d 464 (App. Div. 2001), actually held that Odell reasonably relied on the apparent authority of the president of a condominium board, despite a provision in the association bylaws limiting the president's authority.  728 N.Y.S.2d at 469. The second, *Traitel Marble Co. v. Brown Bros.*, 144 N.Y.S. 562 (App. Div. 1913), concerned a corporate officer who attempted to orally modify a contract when "his authority to change the contract [was] expressly limited to changes authorized by him in writing," *id.* at 564, a topic wholly irrelevant here.  Despite an attempt by VIPC to yet again confuse the issue, it remains clear that Cinotti's undisputed record of acting on behalf of VIPC in dealing with HandTrade conferred upon him the implied authority to enter into the Exclusive Agreement.

### D.    A Vote of Preferred Shareholders Was Unnecessary

The Preferred Stock Agreement requires the vote or written consent of two-thirds of the preferred shareholders to "[e]ffect any sale, lease, assignment,

---

*(cont'd from previous page)*

court decision on the issues of a late amendment to a complaint and proper damages for a breach of contract action.

11

transfer, or other conveyance of all or substantially all of the assets of the corporation." (VIPC Ex. 5 at § 5.) In arguing that this clause applies to this case, VIPC asserts that the Exclusive Agreement assigned the patents in suit to HandTrade and that these patents were "the sole assets of the plaintiff corporation." (Opp'n Br. at 13.) But VIPC offers no support for this, citing only the original assignment of the patents to VIPC and a portion of the Davidsohn Affidavit simply restating the bald assertion from the brief. (VIPC Ex. 4; Davidsohn Aff. at para. 8.)

First, by the terms of the Exclusive Agreement itself, VIPC also licensed "trademarks, service marks, and copyrights" to HandTrade. (VIPC Ex. 9 at § 3(F).) VIPC does not contend that the Agreement assigned these to HandTrade. Indeed, VIPC retained title to them. Second, as VIPC's financial statements and tax returns indicate, in September 1999, VIPC had $81,000 in cash and security deposits and $82,000 in furniture, fixtures, and equipment. (*See* Ex. BB.) At the end of 2000, VIPC had $93,000 in cash and other assets and $82,000 in furniture, fixtures, and equipment. (*See* Ex. CC.). Yet at this time, VIPC valued its patents at only $75,000, less than half the value of its tangible assets. (*See* Ex. CC.) Thus, even if the Exclusive Agreement intended to assign some of VIPC's assets, *i.e.*, the patents in suit, to HandTrade, it did not assign the majority of VIPC's assets, and thus it did not require any shareholder approval.

### E.   VIPC Ratified the Agreement by Accepting Benefits Conferred

The Exclusive Agreement needed no ratification, as it was entered into by a corporate officer acting with valid authority.  But assuming, *arguendo*, that ratification was needed, VIPC ratified the Agreement by accepting the benefits HandTrade conferred.

VIPC asserts that "even acceptance of the benefits made without authority does not change its invalidity as a matter of law."  (Opp'n Br. at 11.)  In support, VIPC cites *Seif v. City of Long Beach*, 286 N.Y. 382, 36 N.E.2d 630 (1941).[7]  But *Seif* deals with *Municipal* Corporations – a separate and distinct body of law.  *See Id.* 36 N.E.2d at 631-32.  VIPC also cites *Strauss Linotyping Co. v. Schwalbe*, 159 A.D. 347, 144 N.Y.S. 549 (App. Div. 1913), for the purported proposition that "[w]hen a contract is found to be legally void or invalid, the contract cannot be ratified."  (Opp'n Br. at 12.)  But *Strauss* held only that an *illegal* contract cannot be ratified.  144 N.Y.S. at 551 (holding that where "the real consideration for the agreement was the discontinuance of the [felony] criminal proceeding," the agreement was contrary to law and cannot be ratified).  Indeed, it is well-established that accepting a benefit ratifies a contract.  *See, e.g., Jourdan v.*

---

[7]   The case name, according to VIPC, is *City of Long Beach v. New York City*. However, VMU could not find any case by that name; the case which appears at the reporter volume and page number VIPC cites is discussed herein.

*Long Island R.R.*, 22 N.E. 153, 155 (N.Y. 1889); *Irving Trust Co. v. Townsend*, 65 F.2d 406, 408 (2d Cir. 1933).

VIPC admits that it accepted a substantial benefit from HandTrade in the form of HandTrade's payment of VIPC's costs in a prior litigation (the "Big Planet" litigation). However, because VIPC's counsel acknowledged this payment twenty-eight days prior to the final execution of the Exclusive Agreement, VIPC argues that this benefit somehow derived from VIPC's prior agreement with HandTrade. The language of the two agreements, however, refutes this argument.

The Exclusive Agreement states that "[i]n the current litigation entitled *Visual Interactive Phone Concepts, Inv. v. Big Planet et al.*, Case No. C99209361W 9 (N.D. Cal.), HandTrade will assume the costs of litigation incurred subsequent to the letter agreement between patent litigation counsel, HandTrade and VIPC dated June 16, 2000." (VIPC Ex. 9 at sec. 4.) The predecessor agreement, on the other hand, makes no reference to the costs of the Big Planet litigation, although that litigation was ongoing at that time and was mentioned as such. (Ex. R at para. 5(a).) The predecessor agreement even addresses litigation costs, but specifically omits the Big Planet litigation, stating instead that the costs of any *future* patent litigations would be borne equally by VIPC and HandTrade. (Ex. R at para. 5(c)-(d).) Clearly HandTrade paid VIPC's Big Planet litigation costs in good faith anticipation of the execution of the Exclusive Agreement, not,

14

as VIPC contends, in furtherance of the predecessor agreement.[8]

## V.    The State Court Action Cannot Confer Standing Retroactively

Only the rights held by the plaintiff on the date it files suit can determine standing. *See Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed. Cir.), *amended*, 104 F.3d 1296 (Fed. Cir. 1996). Therefore, even if the state court judgment voided the Exclusive Agreement *ab initio*, the retroactive effect arrives too late. VIPC declines to address this point, but the law is clear: standing defects cannot be retroactively cured.

## VI.   CONCLUSION

For all of the foregoing reasons, as well as those put forth in VMU's opening brief, VMU respectfully requests the Court grant its Motion for Summary Judgment.

---

[8]  VIPC also argues that the Agreement was invalid because VIPC did not deliver copies of certain documents to HandTrade as per Section 8. (Opp'n Br. at 10, 14.) VIPC errs, however, because only Section 7, not Section 8, lists conditions precedent to the Agreement. *See LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.*, 2003 WL 21671812, *3 (S.D.N.Y. 2003) ("Determination of whether the language constitutes a promise or condition precedent depends on whether the contract used the language in conditional terms, such as 'if' and 'unless and until.'"); *accord Su Mei, Inc. v. Kudo*, 755 N.Y.S.2d 481, 483 (N.Y. App. Div. 2003). Regardless, VIPC ultimately ratified the Agreement.

Dated: March 31, 2008

Respectfully submitted,
*s/ Cynthia V. Fitzgerald*
Cynthia V. Fitzgerald
Daniel A. DeVito
Marti A. Johnson

Attorneys for Defendants and Counterclaim-
    Plaintiffs, Virgin Mobile USA, LLC