**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VISUAL INTERACTIVE PHONE CONCEPTS, INC., | : : : | CIVIL ACTION NO. 05-2661 (MLC) |
| Plaintiff, | : : | **MEMORANDUM OPINION** |
| v. | : : | |
| VIRGIN MOBILE USA, | : : | |
| Defendant. | : : | |

**COOPER, District Judge**

Plaintiff, Visual Interactive Phone Concepts, Inc. ("VIPC"), alleges claims of infringement of U.S. Patent No. 5,606,361 (the "'361 Patent") and U.S. Patent No. 5,724,092 (the "'092 Patent") (collectively, the "patents-in-suit") against defendant, Virgin Mobile USA ("VMU"). (Dkt. entry no. 1, Compl.) VMU asserts counterclaims against VIPC for judgments declaring non-infringement and invalidity of the patents-in-suit. (Dkt. entry no. 3, Ans. & Countercl.) VMU now moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 83.) VIPC opposes the motion. (Dkt. entry no. 91.) For the reasons stated herein, the Court will grant the motion.[1]

---

[1] The Court held oral argument on this motion on August 20, 2008. Because no party has ordered a transcript of the oral argument, the Court will cite to that oral argument as "8-20-08 Oral Arg."

**BACKGROUND**

VIPC brought this action against VMU on May 20, 2005. (Dkt. entry no. 1.) On September 29, 2005, VMU served its first set of requests for production of documents to VIPC. (Dkt. entry no. 85, Decl. of Cynthia V. Fitzgerald ("Fitzgerald Decl."), Ex. A, First Set of Requests for Produc. of Docs.) VMU requested, <u>inter alia</u>, all documents relating to (1) "the ownership, assignment, or other transfer of ownership of the patents-in-suit", and (2) "any offers to license or licenses regarding any of the patents-in-suit". (<u>Id.</u>, Ex. A, First Set of Requests for Produc. of Docs., at 8.) VMU also served its first set of interrogatories to VIPC on September 29, 2005. (<u>Id.</u>, Ex. B, First Set of Interrogs.) VMU asked VIPC to, <u>inter alia</u>, "[i]dentify all license agreements, settlements, covenants not to sue, and any negotiations thereto, that relate to the patents-in-suit". (<u>Id.</u>, Ex. B, First Set of Interrogs., at 11.)

VIPC responded to the requests for production of documents and interrogatories by identifying, <u>inter alia</u>, a license agreement between VIPC and HandTrade.Com, Inc. ("HandTrade"), executed in 1999 (the "Non-Exclusive Agreement"). (<u>Id.</u>, Ex. C, Resp. to First Set of Interrogs., at 7-8.) VIPC also identified an action in New York state court involving VIPC and HandTrade. (<u>Id.</u>, Ex. C, Resp. to First Set of Interrogs., at 7.) This action was brought by VIPC against HandTrade on June 22, 2005,

2

alleging breach of contract based on the Non-Exclusive Agreement ("First New York Action").  (See dkt. entry no. 92, 3-24-08 Certification of Mark L. Hankin ("3-24-08 Hankin Cert."), Ex. 16, First New York Action Compl.)  Mark L. Hankin ("Hankin"), VIPC's counsel in this action, signed and submitted the First New York Action complaint.  (Id.)  VIPC has not amended or supplemented this response.  (Dkt. entry no. 84, VMU Br., at 4.)

VMU deposed Anthony J. Cinotti ("Cinotti"), a former officer of VIPC, on February 8, 2007.  (Id.)[2]  In connection with this

---

[2] Cinotti was the person who first revealed to VMU that there was an Exclusive Agreement pertaining to the patents-in-suit.  (VMU Br., at 4-5.)  This revelation was made when VMU subpoenaed and deposed Cinotti.  (Id.)  Cinotti is not a party in this action.  Cinotti is a co-inventor of the patents-in-suit, and is formerly an officer, and currently a director, of VIPC. (Fitzgerald Decl., Ex. C, Resp. to First Set of Interrogs., at 5; VMU Br., at 33-34.)  In April 2000, a dispute arose between Cinotti and John Davidsohn ("Davidsohn"), who is the other co-inventor of the patents-in-suit and is the current chief executive officer of VIPC.  (Fitzgerald Decl., Ex. C, Resp. to First Set of Interrogs., at 5; VIPC Br., at 9.)  That dispute concerned election of officers and control over VIPC, and was heavily litigated through the appeals level in New York state court.  (VIPC Br., at 8-9; dkt. entry no. 95, VMU Reply Br., at 8.)  During Davidsohn's deposition in this action, taken on October 10, 2006 ("10-10-06 Davidsohn Deposition Testimony"), Davidsohn testified that he did not "know where Cinotti" was, and that he had a "skip tracer looking for him".  (10-10-06 Davidsohn Dep. Test., at 87.)  He further testified that he had "a subpoena out against Cinotti".  (Id. at 103.)  However, VMU's counsel stated at oral argument that VMU was able to locate and depose Cinotti without difficulty.  (8-20-08 Oral Arg.)  Davidsohn's deposition testimony as to Cinotti's whereabouts is relevant to the Court's determination of bad faith, discussed infra, because it was only by contacting and deposing Cinotti that VMU learned that the Exclusive Agreement existed.  (VMU Br., at 4-5.)

deposition, VMU received a copy of a document entitled "Amended And Restated License Agreement And Exclusive License Agreement Between HandTrade.Com, Inc. And Visual Interactive Phone Concepts, Inc.", dated August 10, 2000 (the "Exclusive Agreement").  (Id.; Fitzgerald Decl., Ex. D, Exclusive Agreement.)  The Exclusive Agreement was executed by Cinotti, and, inter alia, granted HandTrade the (1) exclusive right to use the technology claimed in the patents-in-suit, and (2) right to sue for infringement of the patents-in-suit.  (Fitzgerald Decl., Ex. D, Exclusive Agreement.)

VMU then moved for summary judgment in its favor on April 9, 2007, arguing that, inter alia, the Exclusive Agreement divested VIPC of standing to bring this action.  (Dkt. entry no. 48, VMU Br. in Support of 4-9-07 Mot. for Summ. J.)[3]  VIPC opposed the motion, arguing that, inter alia, the Exclusive Agreement was invalid as a matter of law.  (Dkt. entry no. 58, 4-24-07 VIPC Opp. Br. to 4-9-07 Mot. For Summ. J.)  VIPC's papers in opposition to this motion were submitted by Hankin.  (See dkt. entry nos. 57-60.)

---

[3] VMU first moved for summary judgment on February 23, 2007. (Dkt. entry no. 21, 2-23-07 VMU Mot. for Summ. J.)  VIPC opposed that motion.  (Dkt. entry no. 37, 3-26-07 VIPC Opp. Br. to 2-23-07 VIPC Mot. for Summ. J. ("3-26-07 VIPC Br.").)  However, the Court denied that motion because of technical deficiencies on May 10, 2007.  (Dkt. entry no. 64, 5-10-07 Order.)

While this motion was pending, VMU independently learned that VIPC had brought another action in New York state court against HandTrade on March 11, 2007 (the "Second New York Action").  (VMU Br., at 5-6; see Fitzgerald Decl., Ex. E, Second New York Action Compl.)  VIPC did not inform VMU or the Court of the Second New York Action.  (VMU Br., at 5.)  In the Second New York Action, VIPC alleged that, inter alia, (1) it entered into the Exclusive Agreement with HandTrade, and (2) HandTrade breached the Exclusive Agreement by failing or refusing to pay the royalties and minimum license fees required under it.  (Fitzgerald Decl., Ex. E, Second New York Action Compl.)  VIPC thus requested, inter alia, a judgment (1) declaring a breach of the Exclusive Agreement by HandTrade, resulting in termination of the Exclusive Agreement, (2) in the sum of $300,000, "plus the value of 3,250,000 of the common stock of" HandTrade due under the Exclusive Agreement, and accrued interest, (3) requiring an accounting of HandTrade's book and records to determine gross revenue received under the Exclusive Agreement, and (4) for royalties under the Exclusive Agreement in an amount of one percent of all gross revenues, and accrued interest.  (Id.)  Hankin signed and submitted this complaint.  (Id.)

VMU informed the Court of the Second New York Action on June 1, 2007, attaching a copy of the Second New York Action complaint.  (Dkt. entry no. 67, 6-1-07 VMU Letter to Court.)

Hankin responded to this letter, stating that, _inter_ _alia_, the "non-validity [of the Exclusive Agreement] had never been an issue", and that "a decision was made by [VIPC] to obtain a judicial declaration in the State of New York terminating the said alleged [Exclusive] Agreement for all purposes". (Dkt. entry no. 69, 6-4-07 Hankin Letter to Court.)

VIPC received a default judgment in the Second New York Action against HandTrade in an order dated August 17, 2007. (Fitzgerald Decl., Ex. F, Second New York Action 8-17-07 Order.) The court in the Second New York Action also ordered that a damages inquest would be conducted before the Honorable Lester Sacks, a New York Judicial Hearing Officer (the "JHO"). (_Id._; VMU Br., at 6.) On August 31, 2007, this Court, _inter_ _alia_, (1) denied VMU's first motion for summary judgment without prejudice, and (2) stayed this action for ninety days pending the outcome of the Second New York Action. (Dkt. entry no. 76, 8-31-07 Order.)

Hankin then filed a "Notice For Inquest/Trial" in the Second New York Action on September 4, 2007. (Fitzgerald Decl., Ex. G, Second New York Action Notice For Inquest/Trial.) VIPC requested, _inter_ _alia_, a judgment (1) "declaring a breach of the [Exclusive Agreement] by [HandTrade] resulting in the termination of [the Exclusive Agreement]", (2) "in the sum of $300,000.00 plus value of $3,250.00 of the common stock of [HandTrade] due [and] owing under the [Exclusive Agreement] to [VIPC] from [HandTrade] plus accrued interest", (3) "requiring an accounting

6

of [HandTrade's] books and records for the period of August 10,
2000 through the present to determine gross revenue received
under the [Exclusive Agreement]", and (4) "for royalties under
the [Exclusive Agreement] in an amount of one (1%) percent of all
gross revenues, plus accrued interest". (Id.)

The JHO entered a Decision and Order, dated October 9, 2007,
stating that, inter alia, the Exclusive Agreement was not
"renewed by proper authority" and thus "the alleged renewal was
void 'ab initio'" ("Second New York Action 10-9-07 Decision and
Order"). (Fitzgerald Decl., Ex. H, Second New York Action 10-9-
07 Decision and Order.)  In reaching this decision, the JHO
relied on the testimony of Davidsohn, noting that "[n]o proof
ha[d] been presented to contradict" his testimony. (Id.)  On
November 14, 2007, the court in the Second New York Action
ordered and adjudged that (1) the Exclusive Agreement was "void
as a matter of law as of the date of execution for lack of
authority", and (2) because the Exclusive Agreement was "void ab
initio, no damage award" was rendered ("Second New York Action
Judgment"). (Fitzgerald Decl., Ex. I, Second New York Action
Judgment.)

VIPC thereafter requested that the Court place this action
"on the calendar", stating that the Second New York Action
Judgment showed that the Exclusive Agreement was invalid, and
thus, VIPC had standing to bring this action.  (Dkt. entry no.

7

78, 1-8-08 VIPC Letter to Court; dkt. entry no. 79, First 1-10-08

VIPC Letter to Court; dkt. entry no. 80, Second 1-10-08 VIPC

Letter to Court.)  The Magistrate Judge then granted VMU

permission to move again for summary judgment in its favor.

(Dkt. entry no. 82, 2-5-08 Letter Order.)  VMU again moved for

summary judgment in its favor on February 22, 2008.  (Dkt. entry

no. 83.)  VIPC opposes the motion.  (Dkt. entry no. 91.)

                          **DISCUSSION**

**I.   Summary Judgment Standard**

     Rule 56(c) provides that summary judgment is proper if the

pleadings, the discovery and disclosure materials, and any

affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of

law.  Id.  The summary judgment movant bears the initial burden

of showing that there is no genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the

movant has met this prima facie burden, the non-movant must set

out specific facts showing that there is a genuine issue for

trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual

evidence that raises a genuine issue of material fact and may not

rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249 (1986).

     The Court must view the evidence in the light most favorable

to the non-movant when deciding a summary judgment motion.

                               8

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56© motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.  "By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  <u>Id.</u> at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Id.</u> at 249-50 (internal citations omitted).

## II.  Judicial Estoppel

### A.  Legal Standard

Judicial estoppel bars a litigant from asserting a position that is inconsistent with one that the litigant previously took

9

before a court.  Taylor v. Mooney Aircraft Corp., 265 Fed.Appx. 87, 92 (3d Cir. 2008).  It applies to assertions of both factual and legal positions, and may be applied based on the assertion of a party or a party's counsel.  AFN, Inc. v. Schlott, Inc., 798 F.Supp. 219, 224 (D.N.J. 1992).  "Thus, a position taken or a representation made by counsel in a legal brief or in argument to the court may provide a basis for estoppel."  Id.  However, "judicial estoppel is an extreme remedy, to be used only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court".  Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008) (quotation and citations omitted).

For the Court to apply judicial estoppel against a litigant, (1) the litigant must have taken two positions that are irreconcilably inconsistent, (2) the litigant must have changed the position in bad faith, or "with intent to play fast and loose with the court", and (3) no lesser sanction would adequately remedy the damage done by the litigant's misconduct.  Taylor, 265 Fed.Appx. at 92 (quotations and citation omitted).  The Court also may consider other factors in determining whether to apply judicial estoppel, such as whether the litigant (1) succeeded in convincing a tribunal to accept the position, and (2) would

derive an unfair advantage in the absence of estoppel.  <u>Chao</u>, 517 F.3d at 186 n.5.[4]

## B.  Legal Standard Applied Here

VMU contends that the Court should apply judicial estoppel against VIPC here, as (1) VIPC has advanced two irreconcilably inconsistent positions, (2) VIPC has acted in bad faith, and (3) no lesser sanction than summary judgment would right the wrongs VIPC has committed.  (VMU Br., at 11-16.)  This Court agrees, and will grant VMU's motion on the basis of judicial estoppel.

VIPC has advanced two irreconcilably inconsistent positions here.  In this action, VIPC and Hankin have repeatedly asserted or argued that the Exclusive Agreement is invalid as a matter of law.  (<u>See, e.g.</u>, VIPC Br., at 8-15; dkt. entry no. 34, 3-26-07 Aff. of John Davidsohn ("3-26-07 Davidsohn Aff."), at ¶ 34; dkt. entry no. 35, 3-26-07 Decl. of Mark L. Hankin ("3-26-07 Hankin

---

[4] VIPC cites to <u>Zenith Laboratories, Inc. v. Bristol Myers Squibb Co.</u>, No. 91-3423, 1991 WL 267892, at *11 (D.N.J. Dec. 12, 1991), for the proposition that there is a "requirement that a party must 'successfully' assert a legal position in one proceeding to be barred from asserting an inconsistent position in a latter proceeding" for judicial estoppel to apply.  (Dkt. entry no. 91, VIPC Br., at 16-17.)  This is incorrect.  As noted <u>supra</u>, whether a litigant has successfully asserted a legal position is merely a factor in the Court's judicial estoppel determination.  <u>See</u> <u>Chao</u>, 517 F.3d at 186 n.5; <u>see also</u> <u>AFN, Inc.</u>, 798 F.Supp. at 225 (noting that the "integrity of the judicial process can be sorely compromised short of inconsistent results . . . [i]ndeed, if what is at issue is the integrity of the court, whether a court is asked to rely or has in fact relied on a prior inconsistent position should be a distinction without a difference.")

Decl."), at ¶ 15; 3-26-07 VIPC Br., at 1; dkt. entry no. 57, Aff. of John Davidsohn ("4-24-07 Davidsohn Aff."), at ¶ 49; dkt. entry no. 58, 4-24-07 Decl. of Mark L. Hankin ("4-24-07 Hankin Decl."), at ¶ 8.)  However, while this action was ongoing, VIPC also brought the Second New York Action on March 11, 2007, asserting that, inter alia, (1) "on or about August 10, 2000, [VIPC and HandTrade] entered into a licensing agreement wherein [VIPC] granted a license to [HandTrade] for use of the [patents-in-suit]", (2) HandTrade "was required to pay" royalties and maintenance fees to VIPC under that agreement, (3) HandTrade's failure to pay the royalties and maintenance fees was "a complete breach of contract", and (4) VIPC was owed damages as a result of that breach.  (Fitzgerald Decl., Ex. E, Second New York Action Compl.)  Thus, in the Second New York Action, VIPC not only asserted that the Exclusive Agreement existed and was valid, but also sought damages for a breach of that agreement.  (See id.) These two positions are irreconcilably inconsistent.  See AFN, Inc., 798 F.Supp. at 222-23, 227 (judicially estopping litigant from asserting that contract was illegal, as litigant asserted breach of and sought damages under contract in earlier court action).

VIPC contends that it has neither asserted nor argued that the Exclusive Agreement was valid.  (VIPC Br., at 16-17.)  It explains that upon learning of the existence of the Exclusive

Agreement, it sought to terminate it in the Second New York Action, and merely "inadvertently" pled a breach of contract action.  (Id.)  It explains this inadvertence by stating that it utilized the same complaint filed in the First New York Action. (Id. at 3.)  It further states that the court in the Second New York Action "determined based on [Davidsohn's] testimony that the Exclusive Agreement was void ab initio for lack of authority . . . [a]s such, the pleading defect was excused and the complaint amended to conform to the proof".  (Id. at 16-17.)

This Court finds that VIPC did not merely "inadvertently" plead the Second New York Action as a breach of contract action. The complaints filed in the First New York Action and the Second New York Action seek different damages for breaches of different agreements.  (See 3-24-08 Hankin Cert., Ex. 16, First New York Action Compl.; Fitzgerald Decl., Ex. E, Second New York Action Compl.)  Further, as noted supra, the Notice For Inquest/Trial filed in the Second New York Action on September 4, 2007, again requested, on behalf of VIPC, a judgment (1) "declaring a breach of the [Exclusive Agreement] by [HandTrade] resulting in the termination of [the Exclusive Agreement]", (2) "in the sum of $300,000.00 plus value of $3,250.00 of the common stock of [HandTrade] due [and] owing under the [Exclusive Agreement] to [VIPC] from [HandTrade] plus accrued interest", (3) "requiring an accounting of [HandTrade's] books and records for the period of

August 10, 2000 through the present to determine gross revenue received under the [Exclusive Agreement]", and (4) "for royalties under the [Exclusive Agreement] in an amount of one (1%) percent of all gross revenues, plus accrued interest".  (Fitzgerald Decl., Ex. G, Second New York Action Notice For Inquest/Trial.) Moreover, in a letter to the Court dated August 30, 2007, Hankin represented that VIPC's decision to plead a breach of contract in the Second New York Action was deliberate, as VIPC "took the alternative position" to plead breach of contract so "that if the [Exclusive] Agreement was found valid . . . its termination was required".  (Dkt. entry no. 75, 8-30-07 Hankin Letter to Court.) Thus, it is apparent that VIPC did not "inadvertently" assert that the Exclusive Agreement was valid in the Second New York Action.

This Court also finds that VIPC and Hankin acted in bad faith in asserting these two irreconcilably inconsistent positions.  As noted supra, Hankin filed the Second New York Action Complaint on March 11, 2007, where VIPC alleged that HandTrade breached the Exclusive Agreement.  (See Fitzgerald Decl., Ex. E, Second New York Action Compl.)  Only fifteen days later, on March 26, 2007, Hankin submitted papers to this Court repeatedly representing that the Exclusive Agreement was a "nullity" and "void".  (See, e.g., 3-26-07 Davidsohn Aff., at ¶ 34; 3-26-07 Hankin Decl., at ¶ 15; 3-26-07 VIPC Br., at 1.)

VIPC admitted at oral argument, moreover, that it did not inform VMU or the Court of the Second New York Action.  (8-20-08 Oral Arg.)  Rather, it was only through VMU's independent investigation that VMU learned of the Second New York Action and subsequently informed the Court of it as well.  (VMU Br., at 5; 6-1-07 VMU Letter to Court.)  VIPC's failure to disclose the Second New York Action violated the continuing duty of disclosure.  See Fed.R.Civ.P. 26(e)(1)(A).  This failure is especially egregious considering that Hankin has acted as VIPC's counsel throughout this litigation, as well as in the First New York Action and Second New York Action.

Bad faith also is demonstrated by the deliberate withholding of the Exclusive Agreement from VMU and this Court, which also violates the continuing duty of disclosure.  See Fed.R.Civ.P. 26(e)(1)(A).  As noted supra, VMU only learned of the Exclusive Agreement when it deposed Cinotti on February 8, 2007.  (VMU Br., at 4.)  VIPC claims that it did not know the Exclusive Agreement existed before that deposition, stating that the fact that VIPC brought the First New York Action supports this assertion, as "[c]learly, had [VIPC] known that [the Exclusive Agreement] existed, there would be no need for the termination of the former Non-Exclusive Agreement".  (VIPC Br., at 2-3.)  Hankin also claimed at oral argument that neither he nor Davidsohn were aware of the existence of the Exclusive Agreement until Cinotti's deposition.  (8-20-08 Oral Arg.)

15

This assertion is flatly contradicted by Hankin's earlier submissions, as well as other evidence in the record. Davidsohn's affidavit, submitted to the Court on March 26, 2007, states that, <u>inter alia</u>, (1) "on <u>September 12, 2000</u>, Cinotti obtained written consent(s) of certain shareholders . . . to ratify the Exclusive Agreement with Handtrade dated August 10, 2000", and (2) "on <u>October 2, 2000</u>, Cinotti commenced an action in District Court, Clark County Nevada . . . for a Judicial Declaration that the . . . ratification of the Exclusive Agreement held on September 12, 2000, was valid". (3-26-07 Davidsohn Aff., at ¶¶ 18-19 (emphasis in original).) The Court will hereinafter refer to that action as the "Nevada Action".[5] At oral argument, Hankin stated that he did not know whether Davidsohn was ever served with the complaint in the Nevada Action, so as to make Davidsohn aware of the existence of the Exclusive Agreement around October 2, 2000, well before Cinotti was deposed on February 8, 2007. (8-20-08 Oral Arg.) However, VMU provided this Court with a copy of the docket in the Nevada Action. (8-21-08 VMU Letter to Court, Ex., Nevada Action Docket.) That docket provides that both VIPC and Davidsohn were

---

[5] The Court notes that VIPC did not disclose the Nevada Action in its response to VMU's requests for production of documents and interrogatories. (<u>See</u> Fitzgerald Decl., Ex. C, Resp. to First Set of Interrogs., at 6-7.) VIPC's failure to disclose the Nevada Action also violated the continuing duty of disclosure. <u>See</u> Fed.R.Civ.P. 26(e)(1)(A).

parties to that action, and that Davidsohn answered the complaint on November 22, 2000.  (Id.)[6]  Thus, Davidsohn was aware of the existence of the Exclusive Agreement over six years before Cinotti's deposition in this action occurred.[7]

The Court further notes that VIPC has misled this Court as to the threshold, dispositive issue of standing in this action by not disclosing the existence of the Exclusive Agreement.  It is VIPC's burden to establish that it had standing to bring a suit alleging patent infringement when it brought this action.  See Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d 1304, 1309 (Fed. Cir. 2003) (noting that "in order to assert standing for

---

[6] The Court notes that this evidence also contradicts Davidsohn's testimony in the 10-10-06 Davidsohn Deposition Testimony, where he testified that he was aware of only one agreement between VIPC and HandTrade, the Non-Exclusive Agreement. (10-10-06 Davidsohn Dep. Test., at 60, 72, 84.) However, Davidsohn's testimony as to this issue is unclear at best. (See id. at 84 (stating that "Cinotti had given another – – expanded on the [Non-Exclusive Agreement].  But he wasn't capable of expanding on the [Non-Exclusive Agreement] because he would need board approval; and that would be me, and I never approved anything. So the only license they had was the one license that I know of".)

[7] The Court notes that Davidsohn's testimony as to his knowledge of the whereabouts of documents pertaining to VIPC in general is somewhat dubious.  For example, in the 10-10-06 Davidsohn Deposition Testimony, Davidsohn testified that sometime after 2001, "all sorts of corporate files" were "put in a storehouse", but that he didn't "know the name of" the place the files were stored because "they moved".  (10-10-06 Davidsohn Dep. Test., at 160-61, 165.)  Davidsohn further testified that these files were "destroyed", as they somehow became "water-damaged" and "moldy".  (Id. at 161, 171-72.)

patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent <u>at the inception of the lawsuit</u>") (emphasis in original); <u>Rite Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (noting that "question of standing to sue" for patent infringement "is a jurisdictional one"). Further, in a patent infringement case, only "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; <u>Paradise Creations, Inc.</u>, 315 F.3d at 1308. Exclusive licensees holding all substantial rights to a patent meet this standard. <u>Id.</u> Thus, if the Exclusive Agreement is valid and enforceable, HandTrade may qualify as an exclusive licensee of the patents-in-suit so as to divest VIPC of standing to bring this action. <u>See id.</u>

Resolving this issue would require extensive litigation in an action that has been ongoing for over three years. The Court would have to trace the chain of title of the patents-in-suit as between VIPC and HandTrade, and determine whether the Exclusive Agreement is valid and enforceable. <u>See, e.g.</u>, <u>Fitroil, N.A., Inc. v. Maupin</u>, No. 98-1212, 1998 WL 851131, at *1-*3 (Fed. Cir. Dec. 3, 1998) (analyzing evidence involving assignment of patent at issue, and determining that no party in the litigation had been shown to be owner of patent); <u>Gaia Techs., Inc. v. Reconversion Techs., Inc.</u>, 93 F.3d 774, 778-80 (Fed. Cir. 1996) (noting that (1) "[i]n order to adjudicate" the standing issue,

it had to "trace the chain of title" of the patents and trademarks at issue, and (2) "several pieces of evidence in the record" were "relevant to determining" ownership), <u>amended on reh'g in part by</u>, 104 F.3d 1296 (Fed. Cir. 1996).[8]  Thus, VIPC has not only failed to meet its burden to establish standing; the deliberate and misleading conduct by VIPC and Hankin also has prevented this Court from resolving a threshold, dispositive issue in a timely and efficient manner.[9]

No lesser sanction would adequately remedy the damage done by the misconduct here.  <u>See</u> <u>AFN, Inc.</u>, 798 F.Supp. at 227 (judicially estopping litigant from asserting that contract was illegal, and stating that "[i]n furtherance of the broader policy of protecting the integrity of the court and the judicial system,

---

[8] Contrary to VIPC's assertions, the Second New York Action Judgment could not be used to collaterally estop VMU from litigating the issue of whether the Exclusive Agreement is valid and enforceable.  (<u>See</u> VIPC Br., at 19-20.)  New York law would apply to this issue, because this Court must give a state court judgment the same preclusive effect as would be given the judgment under the law of the state in which the judgment was rendered.  <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984); <u>Walker v. Horn</u>, 385 F.3d 321, 337 (3d Cir. 2004). Under New York law, because VMU was neither a party nor in privity with a party to the Second New York Action, the doctrine of collateral estoppel could not be applied against it.  <u>See</u> <u>Howard v. Town of Bethel</u>, 481 F.Supp.2d 295, 301 (S.D.N.Y. 2007) (applying New York law).

[9] Whether a plaintiff has standing to bring this action is a question of law to be determined by the Court, not a question of fact for a jury.  <u>Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.</u>, 485 F.Supp.2d 519, 532 (D. Del. 2007).

no further judicial aid will be given this particular enterprise
of blowing hot and cold as the occasion demands") (quotation and
citation omitted).

The prejudice suffered by VMU is overwhelming here,
moreover.  VMU, at its own expense, has been forced to discover
information concerning a dispositive issue in this action which
VIPC had a duty to disclose to VMU and this Court.  Indeed, at
oral argument, VMU's counsel stated that VMU's legal fees in
defending this action have reached at least $1 million thus far.
(8-20-08 Oral Arg.)  These legal fees would undoubtedly increase
if VMU were subjected to additional discovery to resolve the
issue of VIPC's standing, an issue which, as discussed <u>supra</u>, was
VIPC's burden to establish.  The Court will not subject VMU to
extended litigation to resolve this issue when VIPC and Hankin
have misled the Court and VMU as to this issue since the
inception of this action.[10]  Therefore, because (1) VIPC and

---

[10] The Court may decline to resolve the issue of standing
here, as it "has leeway to choose among threshold grounds for
denying audience to a case on the merits".  <u>Sinochem Int'l Co.
Ltd. v. Malaysia Int'l Shipping Corp.</u>, 127 S.Ct. 1184, 1191
(2007) (quotation and citations omitted); <u>Aqcaoili v. Wiersielis</u>,
273 Fed.Appx. 138, 138-39 (3d Cir. 2008) (noting same); <u>Gonzalez-
Cifuentes v. I.N.S.</u>, 253 Fed.Appx. 173, 175-76, n.2 (3d Cir.
2007) (affirming decision of district court dismissing action on
grounds of res judicata, and stating that it need not decide
whether it lacked subject matter jurisdiction, as it did not
reach merits of case).  The Court is not reaching the merits of
the parties' claims here; therefore, it need not address the
issue of standing.  <u>See Sinochem Int'l Co. Ltd.</u>, 127 S.Ct. at
1191; <u>Gonzales-Cifuentes</u>, 253 Fed.Appx. at 175 n.2.

Hankin have advanced two irreconcilably inconsistent positions, (2) VIPC and Hankin have acted in bad faith, and (3) no lesser sanction would remedy the damage done here, the Court concludes that this is the rare case where judicial estoppel should be applied so as to render judgment against VIPC.  Thus, the Court will grant VMU's motion on that basis.[11]

**CONCLUSION**

For the reasons stated _supra_, the Court will grant the motion.  The Court will issue an appropriate order and judgment.

  s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    September 5, 2008

---

[11] The Court notes that granting VMU's motion leaves VIPC in no worse position than when it brought this action, because the status of the ownership of the patents-in-suit remains unresolved, as it was when VIPC brought this action.